# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**KIMBERLY PARKS**                                                                                            **PLAINTIFF**

**V.**                                                                             **CASE NO. 1:04CV240**

**MISSISSIPPI DEPARTMENT OF TRANSPORTATION and**
**MISSISSIPPI TRANSPORTATION COMMISSION**                      **DEFENDANT**

## MEMORANDUM OPINION

This cause comes before the Court on the defendants' motion for summary judgment [55-1]. The Court has read all the relevant briefs and exhibits and is prepared to rule.

The plaintiff is Kimberly Parks, a former employee of the Mississippi Department of Transportation ("MDOT"). Parks filed this sexual harassment suit against the MDOT on August 10, 2004, alleging that she was harassed by her immediate supervisor, a man named Landon Herron. Parks also alleges that because she refused to submit to Herron's unwanted sexual advances, he gave her an unsatisfactory performance appraisal which resulted in Parks not getting a raise to which she claims she was entitled. Parks then filed a written grievance regarding this harassment and the resulting adverse employment action.

According to the complaint, the MDOT did not take Parks' claims seriously and did nothing to separate Parks from Herron until she requested relocation. Later, the MDOT fired Parks for making a false report of sexual harassment because she refused to take a polygraph test. Parks concedes that her alleged harasser did take a polygraph test and, according to the MDOT, passed it. Parks claims that her termination was actually in retaliation for having made a good-faith complaint of sexual harassment and was in violation of the Civil Rights Act of 1964, as amended by the Civil

Rights Act of 1991. Parks filed a total of three charges with the Equal Employment Opportunity Commission (EEOC), two regarding the alleged harassment and one claiming retaliatory discharge, and she later received right-to-sue letters from the EEOC and filed the instant action. The defendants now move for summary judgment.

## ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves, 120 S.Ct. at 2110.

### I. THE QUID PRO QUO CLAIM.

The defendants first seek summary judgment on Parks' claim brought under the quid pro quo theory. When a supervisor threatens a subordinate with an adverse employment action, the Supreme Court distinguishes quid pro quo cases (which are cases in which the threats are carried out) from hostile work environment cases (which are cases in which threats of adverse employment action are either not carried out or are absent entirely). Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 751,

118 S.Ct. 2257, 2264, 141 L.Ed.2d 633 (1998). See also Faragher v. City of Boca Raton, 525 U.S. 775, 118 S.Ct. 2275, 151 L.Ed.2d 662 (1998). The Fifth Circuit has interpreted Ellerth and Faragher to require courts to follow a "road map" in analyzing cases such as this. Casiano v. AT&T Corp., 213 F.3d 278, 283 (5th Cir. 2000). First, the court must determine whether the suit is classified as a "quid pro quo" case or a "hostile work environment" case by reference to whether the employee suffered a tangible employment action resulting from her acceptance or rejection of the supervisor's alleged sexual harassment. Casiano, 213 F.3d at 283. The defendants concede that denial of a promotion is a tangible employment action and so the quid pro quo analysis applies. The practical effect of application of the quid pro quo analysis is that the employer may be found vicariously liable for the supervisor's actions and certain affirmative defenses available to the employer in a hostile work environment case will not be heard.

At this point, however, the defendants' arguments seem to go off the rails. Despite apparently conceding that they may be held vicariously liable for Herron's alleged sexual harassment, the defendants argue that Parks cannot prove quid pro quo liability because she failed to put the defendants on notice of the harassment until after her negative job evaluations. This is not what is meant by vicarious liability. Rather, in a quid pro quo case, "a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer." Burlington, 524 U.S. at 762, 118 S.Ct. at 2269. Rather, having concluded that this is a quid pro quo case, the next stop on the Ellerth/Faragher road map requires the court to to determine whether the tangible employment action suffered by the employee resulted from her acceptance or rejection of her supervisor's alleged sexual harassment. Casiano, 213 F.3d at 283. If the plaintiff can demonstrate such a nexus, the employer is vicariously liable per se, but if she cannot show such a nexus, then the

3

employer is not vicariously liable under Title VII. Id. at 283-84.

In the case at bar, the Court finds that there are disputed issues of fact which preclude summary judgment on the question of whether a nexus exists between Herron's alleged conduct and Parks' adverse employment action, including but not limited to: (1) whether the alleged harassment actually occurred and (2) whether Herron, in retaliation for Parks' refusal to submit to his advances, gave her an adverse employment evaluation which ruined her chances for promotion. The defendants deny that Herron had any impact on whether Parks was promoted or not, as other personnel made that decision. However, Herron's evaluation evidently played some part, and on the record before the Court, it cannot be concluded with any legal certainty that Herron did not have the power via a negative evaluation to prevent Parks' promotion. Accordingly, summary judgment is denied as to this issue.

## II. HOSTILE WORK ENVIRONMENT.

The defendants also argue that Parks cannot demonstrate a hostile work environment. Having found that the quid pro quo analysis applies, the Court finds that the defendants' arguments pertaining to a hostile work environment are moot, as such an analysis is only relevant when a quid pro quo claim cannot be maintained. Accordingly, summary judgment is denied as to this issue as well.

## III. THE RETALIATION CLAIM.

As the parties agree, Title VII makes it unlawful for an employer to discriminate againsat an employee who makes a charge of discrimination. 42 U.S.C. § 2000e-3a. To establish a prima facie case for retaliation, the plaintiff must show that: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal

connection exists between the protected activity and the adverse employment action. Septimus v. Univ. of Houston, 399 F.3d 601, 610 (5th Cir. 2005). If the employee satisfies the prima facie case, the burden shifts to the employer to state a legitimate non-retaliatory reason for the adverse action. Septimus, 399 F.3d at 610. If the employer successfully does so, any presumption of retaliation drops from the case and the burden shifts back to the employee to show that the proffered reasons are actually pretext for retaliation. Id. at 610-611.

In the case at bar, the first two elements of Parks' prima facie case are satisfied. Her filing of grievances for sexual harassment was an activity protected by Title VII, and her subsequent termination was clearly an adverse employment action against the employee. The defendants claim, however, that Parks cannot show a causal connection exists between her filing of grievances and her termination. The defendants' argument for this position is quite remarkable. They claim that she was actually terminated for (1) making a false claim of sexual harassment, (2) threatening or coercing a supervisor (through the making of a false allegation), (3) misconduct in the performance of her job as demonstrated through the making of a false allegation, and (4) refusing to take a polygraph to prove her claims of harassment, which the defendants considered to be insubordination. In other words, every violation cited by the defendants for terminating Parks relates back to her complaints of sexual harassment, which the Court, at this stage in the case, must accept as true. The Court finds that, for summary judgment purposes, Parks has satisfied the prima facie case.

While the defendants do not, strictly speaking, outline their arguments according to the burden shifting framework described in Septimus, the Court interprets their brief as proffering as a legitimate non-retaliatory reason for Parks dismissal their good faith belief that she did in fact raise false claims which could have led to her termination for any of the four reasons outlined above.

5

Thus, the Court turns to Parks, who must put forth evidence that the proffered reason was merely a pretext for retaliation.

Such evidence is fairly sparse, consisting primarily of complaints about the defendants' investigation of her initial complaints about Herron which she considered to be "a sham" investigation. Parks' evidence (again viewed in the light most favorable to her) seems more likely to demonstrate that the defendants were simply inept in investigating her claims rather than maliciously trying to find grounds to fire her. However, Parks does claim that at least two of her supervisors urged her to drop her grievance because she had no proof and could not win, despite the fact that Parks allegedly had audiotape evidence of Herron's sexual harassment. While it is a close case, the Court concludes that disputed issues of fact surrounding the defendants' investigation and their employment decisions resulting from it preclude summary judgment. Such issues include but are not limited to (1) whether Parks' superiors attempted to pressure her into dropping her grievance and (2) whether her employers refused to consider direct audiotape evidence of Herron's harassment. Accordingly, summary judgment is DENIED.

## **CONCLUSION**

Pursuant to the foregoing analysis, it is hereby ORDERED that the defendants' motion for summary judgment [55-1] is DENIED. A separate order to that effect shall issue this day.

This is the 11th day of January, 2005.

                                                  **/s/ Michael P. Mills**
                                                  **UNITED STATES DISTRICT JUDGE**